UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF SEARCH WARRANT AND ARREST WARRANT/COMPLAINT | Case No. _____ |
| | **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**

I, Jonathan Troesser, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of (a) an application for an Arrest Warrant for Terrance SAUNDERS, for Possession With Intent to Distribute Heroin, in violation of 21 U.S.C 841 (a)(1) and Conspiracy to Distribute Heroin, in violation of 21 U.S.C. 846 (b) an application for an Arrest Warrant for Rashad JOHNSON, for Possession With Intent to Distribute Heroin, in violation of 21 U.S.C 841 (a)(1) and Conspiracy to Distribute Heroin, in violation of 21 U.S.C. 846 and (c) an application for a Search and Seizure Warrant for 177 Bemis Street, Unit 1B, Terryville, CT.

2.      The location to be searched is described in the following paragraphs and in Attachment A.  The items to be searched for and seized are further described in Attachment B.

3.      I have been employed as an Ansonia, CT Police Officer since July of 2007, and am currently a Detective assigned to DEA's, New Haven District Drug Task Force, which is comprised of DEA agents and task force officers ("TFO") from the multiple other law enforcement agencies.  During the course of my career, I have participated in numerous criminal investigations including investigations into suspected narcotics trafficking and money laundering.  My participation in the investigations has included coordinating controlled purchases of narcotics utilizing confidential informants, cooperating witnesses and undercover law enforcement officers; coordinating the execution of search and arrest warrants; conducting

electronic and physical surveillance; analyzing records related to narcotics trafficking; testifying

in Grand Jury and District Court proceedings; and interviewing individuals and other members

of law enforcement regarding the manner in which narcotics traffickers obtain, finance, store,

manufacture, transport and distribute controlled substances.  I have participated in multiple

investigations involving the execution of search warrants on electronic devices.

4.      Based upon my experience and training, I am familiar with the manner and means

employed by narcotics traffickers, including the manner and means by which narcotics

traffickers communicate, as well as the devices commonly utilized by them, and those methods

employed by narcotics traffickers in an effort to avoid detection by law enforcement.

5.      The facts in this affidavit come from my personal observations, my training and

experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set

forth all of my knowledge about this matter.

6.      Based on the facts set forth in this affidavit, there is probable cause to believe that

violations of Title 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C) and 846 have occurred.  There

is also probable cause to search the location described in Attachment A for evidence,

instrumentalities, contraband, or fruits of these crimes as further described in Attachment B.

7.      The Court has jurisdiction to issue the proposed warrant because it is a "court of

competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court

of the United States that has jurisdiction over the offense being investigated; *see* 18 U.S.C. §

2711(3)(A)(i).

## PROBABLE CAUSE

8.     This investigation by the DEA NHDO involves the investigation into the suspected heroin overdose of a forty-five year old female occurring in Shelton, Connecticut on or about March 23, 2016. The name of the forty-five year old female is known to me and is referred to as VICTIM #1 throughout the course of this affidavit. During the course of the investigation, investigators have completed controlled purchases of heroin, analyzed telephone toll records, analyzed telephone text messages, conducted commercial and government database checks and reviewed previously written law enforcement reports.

9.     On March 23, 2016, members of the Shelton Police Department and emergency medical services responded to a suspected drug overdose at a residence in Shelton, Connecticut. Investigators identified that Victim #1 was not breathing, did not have a pulse and was in a kneeling position, face down on the floor. While at the residence, emergency medical personnel pronounced VICTM #1 deceased. Seized from the residence were various drug and non-drug exhibits, including a cellular telephone belonging to VICTIM #1 and suspected heroin contained within various "folds". Investigators noted that one of the folds that contained suspected heroin was labeled "Ride it".

10.     During the course of this investigation, and at the request of  DEA Task Force Officer Brian McPadden, Monroe Police Detective Michael Chaves conducted a forensic analysis of the telephone. Det. Chaves was able to identify text messages and other information from the cellular of VICTIM #1. During the course of the investigation, SA Dana Mofenson and I analyzed information extracted from the telephone of VICTIM #1, to include: text message, call history and contact information. Investigators reviewed

the following text message exchange occurring between VICTIM #1 and the unidentified

source of supply at telephone number 203-232-9348 occurring March 22, 2016.

> VICTIM #1:   "U around? I'll be up at 3:15"
>
> "J":   "Yea"
>
> VICTIM #1: "I'll call when I'm close"

11.     Based upon my training and experience and upon my knowledge of this

investigation, I believe that VICTIM #1 and the unidentified source are arranging to meet

one another for the purposes of completing a drug transaction. Specifically, VICTIM #1

asks if the unidentified source is available to meet ("U around"). The unidentified source

responds they are available to meet ("Yea"). VICTIM #1 states that they will call the

unidentified source when they are in close proximity to the unidentified source ("I'll call

when I'm close").

12.     Investigators identified fifty-three (53) contacts between the telephone of

VICTIM #1 and the telephone of the unidentified source, the subject telephone. Of the

fifty-three (53) contacts, investigators identified seven (7) incoming and outgoing

contacts occurring within an approximate one (1) hour period on March 22, 2015, the day

before the suspected drug overdose.

13.     On April 4, 2016, members of the DEA NHDO TDS issued an

administrative subpoena to Verizon Wireless, requesting subscriber information and

telephone toll records for telephone number 203-232-9348, SUBJECT TELEPHONE 1.

Subscriber information for the telephone was listed as Micheal Jefferson of Waterbury,

CT. The telephone was listed as a prepaid telephone. Investigators believe that the listed

subscriber Micheal Jefferson is a fictitious name. Investigators identified thirty-one (31)

telephone contacts between the telephone of VICTIM#1 and the telephone of the

unidentified source, SUBJECT TELEPHONE 1, from March 9, 2016 through March 25,

2016.

14.     On March 23, 2016, while departing the residence of VICTIM #1,

investigators identified a series of incoming telephone calls to the cellular telephone

(which was seized as evidence during this investigation) of VICTIM #1. Shelton Police

Detective Nugent answered an incoming telephone call that was associated with a contact

in the telephone of VICTIM #1. Detective Nugent spoke with an individual who

identified himself by first and last name. The individual reported that he was familiar

with VICTIM #1 and had been in drug rehabilitation with VICTIM #1. The individual

also reported that VICTIM #1 was addicted to drugs and that the drug source of supply

for VICTIM #1 was a black male in Waterbury, Connecticut.

15.     On April 29, 2016, DEA TFO Troesser interviewed an individual,

hereinafter referred to as confidential source, who agreed to provide information

regarding distributors of illegal drugs to the Drug Enforcement Administration. The

individual has provided reliable information to law enforcement over the past several

months and investigators have been able to corroborate some of the information provided

to law enforcement relative to this investigation. The confidential source stated that over

the past three or four years, the confidential source has purchased heroin from three

individuals who have all utilized telephone number 203-232-9348, Subject Telephone 1.

The confidential source stated that currently, an individual known to the confidential

source as "J" utilizes Subject Telephone 1. The confidential source stated that all of the

individuals who utilize the telephone "work together". The confidential source previously

reported to law enforcement that the stamp of the heroin purchased from "J" is "ride it".

As previously referenced, investigators note that the markings "ride it" are the same

markings that were recovered from the residence of VICTIM #1. The confidential source

agreed to proactively cooperate with law enforcement and completed controlled

purchases of suspected heroin in furtherance of this investigation.

16.     On August 30, 2016, members of the DEA New Haven District Office,

utilized the confidential source and an undercover officer to complete the controlled

purchase of heroin from "J" in Waterbury, Connecticut. At the direction of investigators,

the confidential source, hereinafter referred to as CS1 contacted "J" at telephone

number 203-232-9348, Subject Telephone 1.  CS1 was directed by "J" to travel to the area

of Scott Road in Waterbury, Connecticut. The undercover officer drove CS1 to the area of

Scott Road and the transaction was conducted on Stonybrook Road in Waterbury,

Connecticut.   CS1 stated that "J" opened his door and handed the heroin to CS1.

Surveillance observed a blue colored sedan, which appeared to be a Honda or

Acura type vehicle that "J" was operating. The surveillance team was unable to follow the

vehicle or get a registration number after the purchase. CS1 and undercover officer

purchased four bundles of heroin from "J".

17.     On September 12, 2016, members of the DEA New Haven District Office,

utilized CS1 and undercover officer to complete the controlled purchase of heroin from

"J" in Waterbury, Connecticut. At the direction of investigators, CS1 contacted "J" at

telephone number 203-232-9348, Subject Telephone 1.  CS1 was directed by "J" to travel

to the area of Norton Street in Waterbury, Connecticut. The undercover officer drove

CS1 to the area of Norton Street and the transaction was conducted on the corner of Norton Street and Burr Street in Waterbury, Connecticut between the two vehicles. The undercover officer conducted the transaction with "J" and was introduced to "J" by CS1. Upon leaving the area the surveillance team observed a light blue colored sedan, which appeared to be a Honda or Toyota type vehicle, with a State of Connecticut dealer registration, traveling on Norton Street that "J" was operating. The surveillance team was unable to follow the vehicle and did not obtain the registration number after the purchase. CS1 and undercover officer purchased six bundles of heroin from "J".

18.     On September 14, 2016, members of the DEA New Haven District Office, utilized the undercover officer to set up a controlled purchase of heroin from "J" in Waterbury, Connecticut. The undercover officer placed a call to telephone number 203-232-9348, Subject Telephone 1, which was answered by a male. The undercover officer and the male arranged for the undercover officer to travel to Waterbury, Connecticut and purchase six bundles of heroin. Once in the area the undercover officer placed a second call to telephone number Subject Telephone 1 which was answered by the male. The male then instructed the undercover officer to stay in the area and that the male would text message the undercover officer momentarily on a street name where the transaction will occur.  A short time later the undercover officer received a text message from Subject Telephone 1 which read:

| | |
|---|---|
| "J": | *"Malane lane Naugatuck"* |
| UNDERCOVER: | *"Ok...will plug it in and call when there* |
| "J": | *"Ok"* |

19.     The undercover officer arrived and parked on Mellane Lane and then placed an outgoing call to telephone number 203-232-9348, Subject Telephone 1, which was answered by the male. The undercover officer informed the male that the undercover officer was at the location.  The undercover officer waited approximately 25 minutes and then initiated a series of several unanswered calls and text messages with Subject Telephone 1.  It appeared to the undercover officer that Subject Telephone 1 had been turned off.  The operation was then terminated.

20.     On October 4, 2016, members of the DEA New Haven District Office, utilized the undercover officer to set up a controlled purchase of heroin from "J" in Waterbury, Connecticut. The undercover officer placed a call to telephone number 203-232-9348, Subject Telephone 1, which was answered by a male. The undercover officer and the male arranged for the undercover officer to travel to Waterbury, Connecticut and purchase six bundles of heroin. The undercover officer informed the male on the telephone that the undercover officer was in Naugatuck, CT. The male instructed the undercover officer to stay there and would call back. A short time later the undercover officer called Subject Telephone 1 and the same male answered again. The male stated to the undercover officer that he would text a street name to meet in a few. Approximately ten minutes later, the undercover received a text message from Subject Telephone 1 that read "Peach Street" which is located in Waterbury, CT.  Members of the DEA then established physical and aerial surveillance of Peach Street,  along with electronic surveillance of Subject Telephone 1. The undercover officer then informed the surveillance team that "J" moved the meet spot to the top of Raymond Street in Waterbury, CT. The surveillance team moved to that location along with the undercover

officer.  I, TFO Troesser, parked on Raymond Street observed a Maroon Acura come up

the road and pass the undercover officer's vehicle and then turned around and drove back

towards the undercover officer's vehicle. I observed the vehicle pull up next to the UC

vehicle and leave. After the maroon Acura left the undercover officer observed

CT registration AF67827 on the maroon Acura. Prior to the maroon Acura leaving SA

Brinker observed the hand to hand transaction from aerial surveillance between the

undercover officer  and the passenger of the maroon Acura. SA Brinker then observed the

maroon Acura leave the area and conduct other hand to hand transactions on the streets of

Waterbury, CT with other vehicles. SA Brinker observed the maroon Acura drive

into Murray Park in Waterbury, CT and parked the vehicle. SA Brinker observed two

males exit the vehicle and meet with two other males that were already at the park. A

short time later the maroon Acura left the park and surveillance was then terminated. The

undercover officer purchased six bundles of heroin.

     21.    On October 13, 2016, members of the DEA New Haven District Office,

utilized the undercover officer to set up a controlled purchase of heroin from "J" in

Waterbury, Connecticut. The undercover officer had previously been in contact with "J"

at telephone number 203-232-9348, Subject Telephone 1, and had exchanged text

messages with "J" regarding the purchase of heroin.  The undercover officer received a

text message from "J" who offered to sell heroin to the undercover officer. The

undercover officer while with SA Mofenson and TFO McPadden, contacted "J" at

telephone number 203-232-9348, Subject Telephone 1, and arranged to purchase six

bundles of heroin from "J". While preparing for the controlled purchase of heroin and

enroute to meet with "J" to complete the controlled purchase, the undercover officer and

"J" exchanged additional communications. During one of the additional communications, "J" instructed the undercover officer to travel to 33 Warren Street in Waterbury, Connecticut. DEA then established surveillance in the area of Warren Street. The undercover officer then traveled to the area of Baldwin Street and Warren Street in Waterbury, Connecticut. The undercover officer parked his vehicle in front of the residence at 33 Warren Street. While parked on Warren Street, the undercover officer exchanged additional text messages with "J" over Subject Telephone 1. I, TFO Troesser, observed a grey colored Infiniti sedan, known to be operated by "J", arrive on Warren Street. I then observed the Infiniti sedan pass the undercover officer's vehicle and then reverse directions and travel towards the undercover vehicle, prior to departing the area towards Hull Street. The undercover officer then departed the area and met with the operator of the gray colored Infiniti sedan where the transaction was conducted. The undercover officer stated that during the transaction the operator of the vehicle rolled down the rear driver side window and conducted the hand to hand transaction. The undercover officer was unable to identify the operator dew to the tinted windows and the operator conducting the transaction through the rear driver side window. The undercover officer observed the registration of the above referenced Infiniti sedan to be New Jersey registration, 67DMK.

22.     Following the transaction between the undercover and "J", I observed the grey colored Infiniti sedan depart the area.  I then observed a maroon colored Acura sedan, as well as a black colored Infiniti sport utility vehicle, arrive in the area of where the undercover officer and "J" completed the drug transaction. I observed that the maroon colored Acura was driving at a slow rate of speed following the transaction and

departed the area in the same direction as the above referenced Infiniti sedan. The maroon colored Acura sedan had a State of Connecticut registration of AF67827 and that the black colored Infiniti sport utility vehicle had an unidentified State of Connecticut dealer registration. The above referenced red colored Acura sedan was the same vehicle previously observed during the controlled purchase of heroin on October 4, 2016. Additionally, the operator of the above referenced red colored Acura sedan met with the operator of the above referenced Infiniti sedan following the controlled purchase on October 4, 2016. The operator of the vehicle appeared to completing counter-surveillance. The undercover purchased six bundles of heroin.

23.     On October 14, 2016, TFO Brian McPadden and I arranged to meet with the Confidential Source. During the meeting, I showed a State of CT Department of Corrections photograph of Rashad JOHNSON (DOB 7/9/1991) to see if he recognized him. Immediately upon viewing the photograph, the CS stated "that's Jay. Good job. You guys got him." The CS was referring to the ongoing investigation in which he/she had provided information and conducted a controlled purchase into a DTO operated by "J". The target had previously only been known as "J".

24.     On September 30, 2016, the Honorable Joan G Margolis authorized a search warrant for the location of Subject Telephone 1, 203-232-9348, which allowed law enforcement to locate the Target Telephone through specialized equipment.

25.     On October 6, 2016, at approximately 12:37AM, members of the DEA established physical surveillance in the area of 177 Bemis Street, Terryville, Connecticut and electronic surveillance of Subject Telephone 1. SA Dana Mofenson, TFO Brian McPadden and Telecommunications Specialist, Eric Evans, traveled into the

Country Farms Condominium Complex. Telecommunications Specialist, Eric Evans,

utilized a software program that was able to locate Subject Telephone 1 in the area or 177

Bemis Street, Terryville, Connecticut. Telecommunications Specialist, Eric Evans,

observed that Subject Telephone 1 was active and was located within Unit 1B.

Investigators then observed multiple vehicles parked within the complex.

Investigators observed that the garage to Unit 1B within the complex was open and that

an Infiniti sedan, color gray, was parked "backed in" within the garage. Investigators

noted that the Infiniti sedan remained within the open garage for the duration of the

surveillance which was suspended after approximately fifteen minutes.

      26.    At approximately 9:30AM, SA Dana Mofenson and TFO Brian McPadden

established physical surveillance in the area of 177 Bemis Street, Terryville, Connecticut.

Investigators completed stationary and moving surveillance. During the course of the

surveillance, investigators observed multiple vehicles parked within the complex.

Investigators noted that garage door to Unit 1B within the condominium complex was

closed. At approximately 9:56AM, TFO McPadden observed an Infiniti sedan, color

gray, traveling on Armbruster Road and continue onto Bemis Street (towards the

condominium complex). SA Mofenson also observed the vehicle traveling on Bemis

Street. The vehicle traveled on Bemis Street and continued towards the condominium

complex. TFO McPadden observed the vehicle turn into the condominium complex (from

Bemis Street) turn around within the entrance to the complex and travel back towards the

original direction of travel on Bemis Street. SA Mofenson also observed the vehicle

travel on Bemis Street (away from the condominium complex). TFO McPadden observed

the Infiniti sedan continue to travel on Bemis Street towards TFO McPadden's

surveillance vehicle. The Infiniti sedan dramatically reduced its speed as it approached

TFO McPadden's surveillance vehicle and then accelerated at a high rate of speed as it

passed. TFO McPadden obtained the vehicle registration of the Infiniti sedan which was

New Jersey registration 67DMK. SA Mofenson then observed the Infiniti sedan continue

to travel on Armbruster Road. The Infiniti sedan then reversed directions at the

intersection of Armbruster road and Harwinton Avenue and continue to travel on

Armbruster Road, back towards the condominium complex. Surveillance was suspended

at this time.

27.     Given the results of the surveillance, investigators believe that the Infiniti

sedan was conducting counter surveillance measures aimed at identifying and disrupting

the efforts of law enforcement. Investigators also believe that the Infiniti sedan observed

in the early morning hours at the garage of Unit 1B and the morning hours was the same

vehicle. Also during the controlled purchase with the undercover officer on October 13,

2016, this vehicle bearing the same registration, New Jersey  67DMK  and make and

model, was observed by the undercover officer and other law enforcement officers

conducting the controlled purchase of heroin. A DMV records check of New Jersey

registration 67DMK, revealed that the plate was a dealer plate and the information on the

dealer plate came back to a fictitious address believing that the New Jersey registration,

67DMK is counterfeit.

28.     On October 6, 2016, members of the DEA NHDO issued an

administrative subpoena to Eversource Energy requesting customer information on

utilities of the address, 177 Bemis Street, Unit 1B, in Terryville, CT. The current utility

listing for that address was in the name of Raymond SIMMONS with the phone number

on the listing of 860-973-3257. This phone number appears to be a Comcast landline. The name Raymond SIMMONS and the address 177 Bemis Street, Unit 1B, Terryville, CT was queried in a database which revealed a cell phone number of 203-615-8057 that was associated with a utility at that address. DEA NHDO TDS issued an administrative subpoena to AT&T Wireless, requesting subscriber information and telephone toll records for telephone number 203-615-8057. Subscriber information for the telephone was listed as Terri SAUNDERS with an address of 1129 Wolcott Street, Apartment 5-7 in Waterbury, CT. TFO McPadden then queried the name T. SAUNDERS in Connecticut Adult Probation which listed a Terrance F. SAUNDERS of 68 Rockland Avenue in Waterbury, CT who is currently on probation for charges related to Possession with Intent to Sell and Sales of Narcotics. SAUNDERS provided a contact number to Probation that listed 203-615-8057. This is the same number described above. SAUNDERS also provided his employer name of Berties West Indian American Restaurant in Waterbury, CT.

29.     I, TFO Troesser, made contact with the Waterbury Police Department and inquired about the name Terrance SAUNDERS. The Waterbury Police Department provided information that SAUNDERS has been arrested in Waterbury, CT in that past for Sales of Narcotics and is known to officers to be a drug trafficker. I then searched the name Terrance SAUNDERS in a public data base and observed an obituary in the name of Torrance Jermaine DAWKINS, 22, of Naugatuck, CT who passed away unexpectedly on August 11, 2013. The obituary listed his family as his grandparent, Terrance SAUNDERS, SR. and his uncles Terrance SAUNDERS and Rashad JOHNSON, all of Waterbury, CT. TFO McPadden then queried the name Rashad JOHNSON in

Connecticut Adult Probation which listed a Rashad JOHNSON of 51 Eastern Avenue, apartment 81 in Waterbury, CT who was on probation for charges related to Possession with Intent to Sell Narcotics. It also listed JOHNSON'S employer as Bertie's in Waterbury, CT. This is the same employer that SAUNDERS provided to Probation as well.

30.     On November 2, 2017 members of the DEA in New Haven, CT spoke to members of DEA in Putnam County, NY about a controlled purchase they conducted into target telephone number 203-232-9348, Subject Telephone 1, on October 31, 2017. Putnam County DEA Agents have had multiple fatal and non-fatal overdoses linked to Subject Telephone 1. Putnam County worked in conjunction with Waterbury Police Department in conducting the controlled purchase into Subject Telephone 1 utilizing a confidential informant and an undercover officer. The controlled purchase was successful and the confidential informant and the undercover officer obtained heroin.

31.     On November 3, 2017, TFO McPadden queried Terrance JOHNSON again in Connecticut Adult Probation and observed a new address listed as 177 Bemis Street, Unit 1B, in Terryville, CT. This is the same address that investigators conducted physical and electronic surveillance on October 6, 2016 where investigators located Subject Telephone 1 in the area of Unit 1B and observed a grey Infiniti sedan with New Jersey registration 67DMK backed into the garage that was also observed on an undercover purchase on October 13, 2016.

32.     On May 31, 2018, SA Mofenson and I debriefed a DEA Confidential Source hereinafter referred to as CS2.  CS2 reported that he/she has been contacting "Jay" at phone number 203-232-9348, Subject Telephone 1, to purchase heroin for

approximately two years.  The CS stated that the individual who he/she knows as "Jay" is

a stocky, black male.  The CS added that "Jay" sometimes also sends other

unknown individuals, also known as "runners", to meet with the CS to sell him/her

heroin. The CS stated that upon contacting "Jay" by phone, the CS would be directed to

different streets in Waterbury where the CS would wait in a vehicle for "Jay" or one of

his runner's to arrive.  The hand to hand exchange of money for heroin would occur

through the car windows without anyone exiting their vehicles.  The CS noted

that Branch Street was the only street name that he/she could recall as being a common

meet location.  The CS stated that he/she would purchase one or two bundles a week

from "Jay" and has been doing so for the past two years.

33.     On June 21, 2018, members of the DEA New Haven District office

conducted a controlled purchase of heroin utilizing CS2.  CS2 made contact with "J" at

203-232-9348, Subject Telephone 1.  CS2 was directed to go to Branch Street in

Waterbury, CT.  During the course of this investigation, two houses located on Branch

Street have been identified as being owned SUNDERS' father, Terrance Saunders Sr.

The houses have been identified as 28 and 41/43 Branch Street.  Surveillance at those

houses during the course of the investigation has shown a high amount of foot and

vehicular traffic.  In most cases, hand to hand transactions were being completed in the

driveway behind 41/43 Branch Street.  CS2 arrived on Branch Street and parked near

number 28.  CS2 was sold two bundles of Heroin stamped "DEBO" by a black male who

CS2 had not seen before.  After the purchase, CS2 was debriefed by TFO Troesser and

SA Mofenson.  CS2 stated that the male that sold the Heroin was not "J" and that CS2

had never seen him before.  The black male was suspected of being a "runner" for "J".

34.     On July 2, 2018, members of the DEA New Haven District office conducted a controlled purchase of heroin utilizing CS2.  CS2 made contact with "J" at 203-232-9348, Subject Telephone 1.  CS2 was again directed to go to Branch Street in Waterbury, CT.  CS2 was signaled to by a black male to follow him behind 41/43 Branch Street.  CS2 followed the male behind the house where the black male sold CS2 two bundles of Heroin stamped "FILA".  CS2 stated that the male that sold the Heroin was not "J" and that CS2 had never seen him before.  The black male was suspected of being another runner for "J".

35.     On July 24, 2018, members of the DEA New Haven District office conducted a controlled purchase of heroin utilizing CS2.  CS2 made contact with "J" at 203-232-9348, Subject Telephone 1.  CS2 was directed to go to the Commuter Parking Lot located off RT 8 northbound (South Main Street, Waterbury, CT).  CS2 went to the lot and waited for a short period of time before being redirected by "J" to Raymond Street, Waterbury, CT.  On Raymond Street, CS#2 was approached by a black male operating a blue 2010 Infiniti G37 Sedan bearing CT registration AN09902. (Registered to Derrick Johnson DOB 10/2/1982, a suspected brother of SAUNDERS and JOHNSON).  The black male sold CS2 two bundles of Heroin stamped "CVS Pharmacy".  During the debrief CS2 stated that the male he spoke to on the phone was "J" but the male in the car was not.  CS2 later stated that the male was "J's brother".

36.     On August 10, 2018, Members of the DEA debriefed CS2 regarding "J".  CS2 stated that on or about August 7, 2018, "J", utilizing Subject Telephone 1, contacted CS2 and provided a new phone number to call when needed.  The number provided was 203-695-5250, hereinafter referred to as Subject Telephone 2.  An administrative

subpoena was served on Verizon Wireless and the subscriber info that was provided appeared to be a fraudulent name, "John Jones" of 22 East Main Street Waterbury, CT. The tolls were analyzed for both Subject Telephone 1 and Subject Telephone 2.  A call comparison was performed and it appeared that both numbers were being contacted by the same outside phone numbers.

37.     On August 30, 2018, members of the DEA New Haven District office conducted a controlled purchase of heroin utilizing CS2.  CS2 made contact with "J" at 203-695-5250, Subject Telephone 2. CS2 was directed to go to Rumford Street, Waterbury, CT.  Surveillance units set up in the area around the CS who was equipped with audio and video recording devices.  A black male operating a white Ford Fusion bearing CT Registration AP62229 (Registered to Enterprise Rental Cars) approached the CS and exchanged three bundles of heroin stamped "Made in Mexico" for $180.00 in Official Advanced Funds (OAF). NOTE: The stamp Made in Mexico was linked to an overdose investigation in Putnam County, NY DEA Office.  The Ford Fusion then left the area and was followed by surveillance units.  The vehicle was ultimately lost for a short period of time.  Soon after, the vehicle was observed parked in front of Bertie's West Indian Cuisine, a restaurant owned by Terrance Saunders Sr.  There was large heavy set black male standing in front of the restaurant that Waterbury Police Officer Steven Martin observed getting out of the Ford Fusion.  Officer Martin was able to identify the male as Terrance SAUNDERS from previous investigations. TFO Troesser also drove by the location and observed SAUNDERS standing out front.

38.     TFO Troesser and SA Mofenson debriefed CS2 followed the purchase. CS2 identified the male who sold the heroin as being "J".  TFO Troesser viewed the

surveillance video footage of the buy and confirmed that the male that CS2 met with was in fact Terrance SAUNDERS.  Enterprise was later contacted and it was discovered that the rentor of the Ford Fusion was Shirley Silvestry of Waterbury, CT.

39.    On October 16, 2018 members of the DEA New Haven District office conducted a controlled purchase of heroin utilizing CS2.  CS2 made contact with "J" at 203-695-5250, Subject Telephone 2.  CS2 was directed to go to Branch Street, Waterbury, CT.  CS2 went to the area of Branch Street and waited approximately twenty minutes before a black male approached CS2's vehicle.  The black male provided CS2 with three bundles of suspected Heroin in blue wax folds stamped with a red image of a thumbs up. Due to the lack of daylight after waiting in the area, CS2 was not able to see the black male's face but stated that it was not "J" or his brother because of the male's smaller/thinner size.  CS2 had spoken to "J" on the phone several times during the transaction and stated that the male on the phone was the same male CS2 already identified as "J" (SAUNDERS.).

40.    On October 24, 2018 members of the DEA met with and debriefed CS2. During the debriefing, CS2 viewed a photo array provided by the Waterbury Police Department.  The array contained a booking photo of Rashad JOHNSON.  CS2 viewed the array and immediately identified Photo #4 as being "J's brother".  According to the Photo Array Key, Photo # 4 was the booking photo of JOHNSON.  CS2 did not recognize any of the other individuals in the photo array.  CS2 also confirmed that the male in Photo #4 was the same male that was driving the blue Infiniti that served CS2 heroin on July 24, 2018.

41.     On October 30, 2018, Administrative Subpoenas were served upon

Verizon Wireless for Subject Telephone 1 and Subject Telephone 2.  Both phone

numbers still appeared to have active service and were still subscribed to the same

subscribers as previously noted.

42.     On November 28, 2018, the Honorable Sarah Merriam authorized search

warrants to obtain Pen Register Data for Subject Telephone 1, 203-232-9348 and Subject

Telephone 2, 203-695-525.  A search warrant was also singed to authorize the use of

specialized equipment which would allow law enforcement to precisely locate the

Subject Telephones.  Upon the service of the Search Warrants to Verizon Wireless,

members of the DEA were notified by Verizon Wireless that service to Subject

Telephone 1 had been suspended.

43.     On December 12, 2018 a plan was formulated to begin physical and

electronic surveillance of Subject Telephone 2 at approximately 7:00 PM.  Historical cell

tower data for Subject Telephone 2 revealed that the phone would hit off a cell tower

located in Plymouth/Terryville, CT not far from Bemis Street.  Initial surveillance

revealed that Subject Telephone 2 was hitting off towers in Waterbury, CT.  At

approximately 12:13 AM, SA Mofenson and TFO Troesser observed a white Dodge

Charger bearing CT registration AR64221 (Enterprise Rental) arrive at 177 Bemis Street

and park in front of the garage door to Unit 1B.  At the same time, Telecommunication

Specialist Eric Evans confirmed that Subject Telephone 2 arrived in the area of 177

Bemis Street.

44.     SA Mofenson and TFO Troesser observed a heavy set black male,

matching the physical description of SAUNDERS, exit the Dodge Charger and enter the

front door of Unit 1B.  The lights then went on within the apartment.  Evans was able to

confirm that Subject Telephone 2 was located within the same building.  Shortly after the

male entered the house, Subject Telephone 2 was turned off and surveillance was

terminated.  It was noted that no other individuals or vehicles arrived in the area of the

target location during the surveillance of Subject Telephone 2 as it arrived in the area.

45.     Enterprise Rental was contacted on 12/13/2018 and confirmed that the

rentor of the white Dodge Charger was Shirley Silvestry of Waterbury, CT.  Silvestry

was also the rentor of the white Ford Fusion driven by SAUNDERS during the controlled

purchase on 8/30/2018.

46.     That a review of the laboratory reports for drug evidence seized during the

course of this investigation revealed that some of the purchased exhibits contained a

mixture of Heroin, some contained a mixture of Heroin and Fentanyl and at  least one

exhibit contained a mixture of Fentanyl without Heroin.

47.     Through this investigation, investigators believe that SAUNDERS and

JOHNSON are operating a Drug Trafficking Organization which previously utilized

cellular telephone number 203-232-9348, Subject Telephone 1 and more recently utilized

cellular telephone number 203-695-5250, Subject Telephone 2, to facilitate their

distribution of heroin and other controlled substances. Confidential Sources have stated

that over the past several years, they have purchased heroin from SAUNDERS and or

JOHNSON as well as other unidentified individuals acting as "runners" for the DTO by

contacting Subject Telephone 1 and/or Subject Telephone 2.  Investigators believe that

SAUNDERS is currently in possession of Subject Telephone 2 and is utilizing one or

more additional cellular phones to contact other members of the DTO to arrange for their distribution of heroin and other controlled substances.

      48.    I submit that this affidavit supports probable cause to believe that the above Subject Telephone 2 was utilized by Terrance SAUNDERS and Rashad JOHNSON to facilitate the commission of the following offenses; Possession With Intent to Distribute and Distribution of, Mixtures and Substances Containing Detectable Amounts of Heroin, a Schedule I Controlled Substance, and Fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). As a result, I request that the attached Complaints and Arrest Warrants be issued. I also submit that this affidavit supports probable cause for a warrant to seize the subject telephone which constitutes evidence, fruits, and instrumentalities of the subject offenses.

                Respectfully submitted,

                Jonathan Troesser
                Task Force Officer
                Drug Enforcement Administration

Subscribed and sworn to before me on December 26, 2018

/s/ Sarah A. L. Merriam

HON SARAH A.L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1.      The residence of 177 Bemis Street, Unit 1B, Terryville, CT described as a tan multi-level single family townhouse style condominium located within the Country Farms Condominium Complex. Unit 1B consists of one walk in garage level with two additional levels of living space. The unit number "1B" is prominently located on the front of the unit in the area of the front door.

## ATTACHMENT B

### Particular Things to be Seized

1. Cellular Telephone utilizing telephone number 203-695-5250.